TRADERS & GENERAL INS. CO. *v.* HENDERSON.

5-2793                                              362 S. W. 2d 671

Opinion delivered December 17, 1962.

*Mahony & Yocum,* for appellant.

*Wendell Utley* and *Jack Machen,* for appellee.

CARLETON HARRIS, Chief Justice. The question here presented is whether Traders & General Insurance Company had issued its Workmen's Compensation Insurance Policy (# 12621) granting coverage to the employees of Farr Production Company of Texarkana, and if such policy was in effect on July 11, 1960. O. H. Henderson, an employee of Farr, suffered a compensable injury on that date. Appellant had issued a Workmen's Compensation Policy covering Farr for the previous year, and some time prior to June 9, 1960, Farr had made application to appellant for a renewal of this coverage for the period of time beginning July 10, 1960, and ending July 10, 1961. Traders & General sent the new policy (renewing the insurance for such period of time) to the Wade and Wade Agency, also of Texarkana, on June 14. The agency retained the policy in its possession for some 56 days while Farr was endeavoring to make arrangements to pay a $1,000 deposit premium, required by the company before delivery could be made. The $1,000 was not paid, and on August 9, 1960, the policy was returned by the agency to the company for cancellation "flat."[1] The company contends the policy was never issued; appellee, supported by Farr Production Company, contends that arrangements were made with the agency for payment of the premium; that said premium was charged to Farr, and the policy was in full force and effect on the date of Henderson's accident. The referee held that the policy was in effect, and the full commission held likewise. On appeal, the Circuit Court affirmed the commission. From such judgment, Traders & General appeals to this court.

Without discussing at length the testimony, or arguments advanced, by appellant, we think clearly there is

[1] This is an insurance expression, meaning in effect "from the beginning, or inception, of the policy." Here, it meant that the cancellation was as of July 10, 1960.

substantial evidence in the record to support the finding that the policy had been issued. Decker Wade, a partner in the agency firm, testified,

"We carried Mr. Farr's insurance for the year of 1959, that is, July 10, 1959 to July 10th, 1960 and his policy was received in our office prior to the expiration and we held it and explained to him that we would have to have a deposit premium which is outlined and stipulated by the company of one thousand dollars before we could turn the policy over to him. There was a considerable amount of premium involved and once we release that policy without any money, we as the agents are liable for that earned portion. Mr. Jones [2] came in the office and arrangements were made whereby they would pay for the policy, the Workmen's Compensation and the general liability and also on some trucks that he had but the payment was never made; * * * "

A statement, dated November 22, 1960, appears in the transcript, showing various charges to Farr, together with credits that had been given. While counsel disagree as to the meaning of this statement, it definitely does show a charge to Farr of $2,238 on "WC 12621." This entry was made on July 10, and the sum listed is the amount due as shown by the policy itself. Also the evidence reflects that the previous policy had been issued on a credit basis, and according to the testimony, some portion of payment was still due on that policy. This tends to support Farr's testimony of an "open account" with Wade; however, there are matters appearing in the record which are even more pertinent to the issue, and which constitute substantial evidence of the issuance of the policy. For one thing, appellant company recognized the claim, and actually made payments. On August 15, appellant directed a letter to Farr Production Company seeking information relative to whether Henderson had performed any work since his accident, whether he was unable to work at that time, and inquiring as to when he was expected to return to work. The company paid

---

[2] This refers to Robert Jones, bookkeeper for Farr Production Company.

five weeks' compensation to Henderson (July 13 to August 17) in the amount of $175.00, and other expenses in connection with the claim, all of which totaled $346.56. Decker Wade testified that the claim on Henderson was filed with the Claims Department of Traders & General "during the period of time" that the policy was being returned in the mail to the company, "and they went ahead and processed the claim, not knowing that the policies were in the process of being cancelled" * * *. This statement is a bit difficult to understand since the policy was returned to the company on August 9, and the letter (from the company to Farr) heretofore referred to, was dated August 15; of course, any payment covering compensation through August 17, was made even some time later.

The company sent notice to the Workmen's Compensation Commission, advising that the policy had been cancelled. While the notice of cancellation stated that the policy was cancelled as of July 10, 1960, the commission approved the cancellation as of September 1, 1960. This was in conformity with Sub-section (b) of Sec. 81-1338, Ark. Stats., 1960 Replacement, which provides,

"No contract or policy of insurance issued by a carrier under this act [§§ 81-1301—81-1349] shall be canceled prior to the date specified in such contract or policy for its expiration until at least fifteen [15] days have elapsed after a notice of cancellation has been sent to the Commission and to the employer, provided, however, that if the employer procures other insurance within the fifteen [15] day period, the effective date of the new policy shall be the cancellation date of the old policy.[3]

Possibly the most potent evidence to the effect that the policy had been issued, is contained in a notice sent to the Workmen's Compensation Commission by appellant. This notice was sent in compliance with Rule No. 3 of the Commission, which provides,

---

[3] No other insurance was obtained by the employer.

900

"Every employer within the operations of the Arkansas Workmen's Compensation Law shall file with the Commission proof of its compliance with the insurance provisions of the Law. *A notice from the insurer, through the Arkansas Compensation Rating Bureau, certifying this fact, will be received as acceptable proof.*"[4]

The notice, which was received by the Commission on July 25, 1960, is as follows:

To THE ARKANSAS WORKMEN'S COMPENSATION COMMISSION: THIS IS TO CERTIFY THAT THE WORKMEN'S COMPENSATION INSURANCE POLICY OF THE EMPLOYER DESCRIBED HEREIN HAS BEEN

Issued........renewal...................Date........June 9, 1960...............

Cancelled.............................Date.............................

Amended.............................Date.............................

Employer..................Farr Production Co......................

Address.............Wadley Bldg., Texarkana, Texas...............

Nature of Business.............Oil or Gas Well drilling.............

Place of Business..................State of Arkansas..................

Agency Writing.............Wade, Wade and Associates.............

Number of Policy.........WC-12621......... Date........7-10-60........

Expires.............7-10-61...............

Policy Amended as Follows:.............................

.............................

.............................

.............................

Carrier:.............Traders & General Insurance Co...............

By:.............................
WC-689

The purpose of such a notice is to enable the Commission to know that the Workmen's Compensation Law is being complied with. Certainly, if the certification is effec-

---

[4] Emphasis supplied.

tive *only if the company has received its premium*—such certification means nothing,—and it will be noted that this notice does not state that the insurance has been *conditionally* renewed.[5] Rather, the notice is a certification that a Workmen's Compensation Policy is in effect from July 10, 1960, to July 10, 1961. Of course, it would hardly be feasible to expect the Commission to conduct an investigation to determine whether the company had received its premium. Be that as it may, this certification by appellant is certainly cogent and convincing evidence that it had issued the policy in question.[6]

As previously stated, we think there was substantial evidence to support the finding of the Commission, and the judgment of the Circuit Court is affirmed.

---

[5] Of course, if it so stated, the rule would not be complied with, and the certification would be unacceptable.

[6] Appellant says that the sending of the certifying notice was a "clerical slip."